UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHARLES WATSON,

                                                    Plaintiff,

    vs.

DR. LESTER WRIGHT, Chief Medical                      9:08-CV-62
Officer, DOCS; DOYON DE AZEVEDO,                  (NAM/GJD)
FHSD, Clinton CF, KAREN BELLAMY,
Director Inmate Grievance Program,

                                                    Defendants.
_____

CHARLES WATSON, Plaintiff *Pro Se*
AARON BALDWIN, Asst. Attorney General for Defendants

GUSTAVE J. DI BIANCO, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636 (b) and Local Rules N.D.N.Y. 72.3(c).

In this second amended civil rights complaint, plaintiff alleges that defendants have denied him constitutionally adequate medical care and violated his right to privacy. (Dkt. No. 40). Plaintiff seeks monetary as well as injunctive relief. Amended Complaint (AC) at 12. Presently before the court is defendants' motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6). (Dkt. No. 41). Plaintiff has opposed the motion. (Dkt. No. 49). For the following reasons, this court will recommend granting the defendants' motion in part and denying it in part.

# DISCUSSION

## 1. Motion to Dismiss

To survive a motion to dismiss, the plaintiff must provide "the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008)(quoting *inter alia ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). Plaintiff's factual allegations must be sufficient to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Id.* (citing *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007)). *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (May 18, 2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.").

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (citations omitted). The court must heed its particular obligation to treat *pro se* pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999)(per curiam).

## 2. Facts and Procedural History

Plaintiff filed his original complaint on January 16, 2008, alleging a denial of constitutionally adequate medical care. (Dkt. No. 1). The original complaint named thirteen defendants and challenged conduct, much of which allegedly occurred in the

Western District of New York.  The Western District defendants were employed at either Attica Correctional Facility or Lakeview Shock Incarceration Correctional Facility. (Dkt. No. 1).  Defendants filed a motion to dismiss, and plaintiff filed his first amended complaint. (Dkt. Nos. 21, 22).  On December 15, 2008, Chief Judge Norman A. Mordue issued an order, severing the causes of action in the amended complaint[1] arising in the Western District and transferring them to the Western District of New York. (Dkt. No. 31).  Plaintiff filed a second amended complaint,[2] deleting the severed causes of action and the Western District defendants. (Dkt. No. 40).

The second amended complaint contains three defendants and two claims. Plaintiff names Lester N. Wright, the Chief Medical Officer of the Department of Correctional Services (DOCS); Doyon de Azevedo, the Facilities Health Services Director at Clinton Correctional Facility; and Karen Bellamy, Director of the Inmate Grievance Program.

Plaintiff's first cause of action is for denial of constitutionally adequate medical care against defendants Wright and de Azevedo. AC ¶ 30.  Plaintiff alleges that he has Hepatitis C, and in October of 2004, plaintiff began a twelve month course of treatment for this disease. AC ¶ 7.  Plaintiff states that during this course of treatment,

---

[1] Chief Judge Mordue considered the amended complaint because it was filed as of right and rendered moot the motion to dismiss. (Dkt. No. 31 at 2)(citing *inter alia Brown v. Napoli*, No. 07-CV-838, 2008 WL 4507590, *2 (W.D.N.Y. Sept. 29, 2008)).

[2] Defendants note that plaintiff did not have the "right" to file the second amended complaint as of right under FED. R. CIV. P. 15(a), but defendants have consented to its filing. Def. Mem. of Law at 1. (Dkt. No. 41-2).  Additionally, the second amended complaint has removed the severed claims and defendants, facilitating review of plaintiff's claims.

3

he was tested for viral load at three months and again at six months. AC ¶ 8. Based on the results of these tests, a decision is made whether to continue treatment. *Id.* Plaintiff states that as a result of the test performed at the three month mark, the consulting gastroenterologist directed that the treatment continue. AC ¶ 9.

Plaintiff states that on December 22, 2004, he had a disagreement with defendant de Azevedo about a matter that was totally unrelated to plaintiff's treatment, but which resulted in plaintiff filing a grievance against this defendant, alleging racial discrimination. AC ¶ 10. Plaintiff states that on December 27, 2004, he went to the laboratory for his routine bi-weekly blood test, and asked when his viral load would be checked. AC ¶ 11. Plaintiff claims that although he was told that the viral load test would be performed in January of 2005, he was called to the laboratory on December 30, 2004 and told that the viral load test was ordered "ASAP" by defendant de Azevedo. *Id.*

Plaintiff alleges that he was concerned about defendant de Azevedo's "sudden" involvement in plaintiff's care "in light of the recent disagreement." AC ¶ 12. Plaintiff alleges that defendant de Azevedo had not previously been involved in plaintiff's treatment. *Id.* Plaintiff claims that on December 31, 2004, he reported for his weekly Interferon injection and was told that this would be his last injection because Dr. de Azevedo had discontinued this treatment. AC ¶ 13. Plaintiff states that upon learning of this "premature order to terminate treatment," plaintiff wrote to defendant Wright and the DOCS Commissioner informing them of this "impending" termination. AC ¶ 14.

Plaintiff alleges that on January 5, 2005, he saw Dr. Lee, plaintiff's "assigned" medical provider, who told plaintiff that his viral load test results showed that his viral load had dropped "precipitously" and ordered the treatment to continue for another three months. AC ¶ 15. Plaintiff claims that he received his Interferon injection on January 5, 2005. *Id.*

Plaintiff alleges that on January 10, 2005, plaintiff received an answer to his letter from Dr. Wright, stating that Dr. Wright would defer to Dr. de Azevedo's decisions regarding plaintiff's medical care. AC ¶ 16. Plaintiff claims that he went to the Clinton Medical Clinic on January 14, 2005 and was seen by Dr. de Azevedo for the first time since plaintiff's arrival at Clinton, two years earlier. AC ¶ 17. Plaintiff claims that Dr. de Azevedo told him that his treatment was being terminated even though Dr. Lee had ordered that the treatment be continued. *Id.* Plaintiff states that he was told that the treatment was being discontinued because plaintiff did not achieve a sufficient decrease in viral load under the DOCS guidelines. *Id.*

Plaintiff alleges that defendant de Azevedo discontinued the treatment, notwithstanding Dr. Lee's order and notwithstanding Dr. McDermott's[3] opinion that the treatment should continue. AC ¶ 19. Plaintiff claims that defendant de Azevedo told plaintiff that he spoke with defendant Wright, who concurred with the decision to terminate treatment. *Id.* Plaintiff did not receive any Interferon for two weeks between January 14 and January 27, 2005. AC ¶ 20. Plaintiff states that on January 28, 2005, Dr. de Azevedo "inexplicably" resumed plaintiff's treatment for another twelve weeks.

---

[3] Plaintiff states that Dr. McDermott is another specialist. AC ¶ 19.

AC ¶ 21.

Plaintiff claims that even though the treatment was resumed, when he was tested in April of 2005, his viral load had not decreased sufficiently[4], and his treatment was then permanently terminated. AC ¶ 21. Plaintiff attributes this failure to Dr. de Azevedo's two-week interruption of plaintiff's treatment. *Id*. Plaintiff claims that defendant de Azevedo "achieved his goal" of ensuring the failure of the treatment.

Plaintiff's second cause of action is against defendant Bellamy and is for injunctive relief only. Plaintiff alleges that his right to privacy is violated by the Inmate Grievance Program (IGP). AC ¶ 31. Plaintiff challenges the IGP insofar as it requires inmates with medical grievances to follow the same procedures as other grievances. Plaintiff states that the Inmate Grievance Resolution Committee (IGRC) is the first tier of the grievance process, and investigates inmates' grievances. AC ¶ 24.

Plaintiff complains that because the IGRC consists of both inmate and staff representatives, in order for an inmate to file a medical grievance, he must reveal confidential medical information to other inmates. AC ¶ 25. Plaintiff claims that the failure of defendant Bellamy to provide an "optional" mechanism for inmates to bypass the IGRC in medical grievances violates plaintiff's right to privacy.

3. **Statute of Limitations**

Federal courts borrow the state law personal injury statute of limitations period

---

[4] Plaintiff seems to claim that in order for the treatment to continue, DOCS guidelines require that the treatment cause an inmate's viral load to decrease a certain amount. If that decrease is not achieved, then the treatment is discontinued.

6

for purposes of filing section 1983 actions. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985). In New York State, the relevant limitations period is three years. *Owens v. Okure*, 488 U.S. 235, 250-51 (1989). *See* N.Y. CIV. PRAC. L & R. § 214(5). Thus, unless the limitations period is tolled for some reason, a plaintiff must file his section 1983 civil rights action within three years of the accrual of each cause of action.

Federal law, however, governs the question of when a section 1983 claim accrues. *Covington v. City of New York*, 171 F.3d 117, 121 (2d Cir. 1999)(citing *Morse v. University of Vermont*, 973 F.2d 122, 125 (2d Cir. 1992)), *cert. denied*, 120 S. Ct. 363 (1999). Generally, under federal law, a cause of action accrues when "the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980)(internal quotation marks omitted)).

In this case defendants argue that plaintiff's claims are barred by the applicable statute of limitations because plaintiff's treatment was allegedly "prematurely discontinued" on December 31, 2004 and January 14, 2005, but plaintiff's complaint was not filed until January 16, 2008.

Although it is true that the court did not receive plaintiff's original complaint until January 16, 2008, plaintiff would be entitled to the benefit of the "mailbox" rule. According to the "mailbox rule," plaintiff would be deemed to have filed this action when he gave his original complaint to prison officials for mailing. *See Houston v. Lack*, 487 U.S. 266, 273 (1988)(A *pro se* inmate's papers are deemed filed when the inmate gives the papers to prison officials for mailing). A review of the docket sheet

in this action shows that the complaint was post-marked January 14, 2008, and plaintiff alleges that he gave the complaint to prison officials for filing on the date that he signed the original complaint, January 11, 2008. *See* (Dkt. No. 1 at 10).

Although plaintiff claims that he was initially told by the medication nurse on December 31, 2004 that his treatment would be terminated, plaintiff states that the first day that he was actually denied the treatment was on January 14, 2004, and that he did not receive any treatment for a two week period from January 14 until January 27, 2004. Plaintiff's complaint would thus be timely even using the post-marked date on the complaint of January 14, 2008.[5] Thus, the court will not recommend dismissing the complaint based on the statute of limitations.

**4.     Medical Care**

In order to state an Eighth Amendment claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). There are two elements to the deliberate indifference standard. *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003). The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.* at 184 (citing inter alia *Chance v. Armstrong*, 143 F.3d

---

[5] It is very possible that plaintiff gave the complaint to officers for mailing prior to January 14, 2004. The complaint is dated January 11, 2004, and plaintiff claims he gave it to the officers to mail on that date. This court has no way of knowing how long it might take to mail an item, and will give plaintiff the benefit of the doubt, particularly since his complaint would be timely even using the post-marked date.

698, 702 (2d Cir. 1998)).

### A. Objective Element

In order to meet the objective requirement, the alleged deprivation of adequate medical care must be "sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006)(citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Determining whether a deprivation is sufficiently serious also involves two inquiries. *Id.* The first question is whether the plaintiff was actually deprived of adequate medical care. *Id.* Prison officials who act "reasonably" in response to the inmates health risk will not be found liable under the Eighth Amendment because the official's duty is only to provide "reasonable care." *Id.* (citing *Farmer*, 511 U.S. at 844-47).

The second part of the objective test asks whether the ***inadequacy*** in the medical care is "sufficiently serious." *Id.* at 280. The court must examine how the care was inadequate and what harm the inadequacy caused or will likely cause the plaintiff. *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 32-33 (1993)). If the "unreasonable care" consists of a failure to provide ***any*** treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Id.* (citing *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003)). However, in cases such as this one, where the inadequacy is in the medical treatment that was actually afforded to the inmate, the inquiry is narrower. *Id.* If the plaintiff is receiving ongoing treatment, and the issue is an unreasonable delay or interruption of the treatment, then the "seriousness" inquiry focuses on the challenged delay itself, rather than on the underlying condition alone. *Id.* (citing *Smith*, 316 F.3d at 185). Thus, the court in

9

*Salahuddin* made clear that although courts speak of a "serious medical condition" as the basis for an Eighth Amendment claim, the seriousness of the condition is only one factor in determining whether the deprivation of adequate medical care is sufficiently serious to establish constitutional liability. *Id.* at 280.

### B. Subjective Element

The second element is subjective and asks whether the official acted with "a sufficiently culpable state of mind." *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 300 (1991)). In order to meet the second element, plaintiff must demonstrate more than a "negligent" failure to provide adequate medical care. *Id.* (citing *Farmer*, 511 U.S. at 835-37). Instead, plaintiff must show that the defendant was "deliberately indifferent" to that serious medical condition. *Id.* Deliberate indifference is equivalent to subjective recklessness. *Id.* (citing *Farmer*, 511 U.S. at 839-40).

In order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety. *Id.* (citing *Chance*, 143 F.3d at 702). The defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must draw that inference. *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The defendant must be subjectively aware that his or her conduct creates the risk, however, the defendant may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was "insubstantial or non-existent." *Farmer*, 511 U.S. at 844. Thus, the court stated in *Salahuddin*, that the defendant's believe that his conduct posed no risk of serious

harm "need not be sound so long as it is sincere," and "even if objectively unreasonable, a defendant's mental state may be nonculpable." *Salahuddin* 467 F.3d at 28.

Additionally, a plaintiff's disagreement with prescribed treatment does not rise to the level of a constitutional claim. *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001). Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Id.* (citations omitted). An inmate does not have the right to treatment of his choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). The fact that plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation. *Id.*

Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment. *Sonds*, 151 F. Supp. 2d at 312 (citing *Estelle*, 429 U.S. at 107). Even if those medical judgments amount to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate. *Id. See also Daniels v. Williams*, 474 U.S. 327, 332 (1986)(negligence not actionable under Section 1983). Thus, any claims of malpractice, or disagreement with treatment are not actionable under Section 1983.

Defendants argue that plaintiff has not stated a claim of constitutionally inadequate medical care. Defendants argue that although plaintiff alleges that defendant de Azevedo "prematurely discontinued" plaintiff's treatment on December

11

31, 2004 for non-medical, improper reasons, plaintiff did get his injection the following week on January 7, 2005.  Defendants then argue that on January 14, 2005, the day that plaintiff's treatment was terminated, plaintiff was told that the termination was due to plaintiff's viral load not decreasing sufficiently.  Defendants claim that this is a medical reason, and even if incorrect, would not be the basis for a constitutional claim.

Defendants are correct that differences in medical opinions or plaintiff's disagreement with a medical opinion are insufficient to sustain a deliberate indifference claim.  It also appears that a two-week interruption of treatment may be a "minor" delay.  However, on a motion to dismiss for failure to state a claim, the court must accept as true the statements made in the complaint, and the court is in no position to assess whether a two week delay in plaintiff's treatment is minor.

Plaintiff also alleges that the termination of the treatment was against the orders of two specialists, and that plaintiff's regular physician had ordered the treatment to continue for another three months. AC ¶¶ 15, 19.  The court notes that some of the cases supplied by defendants in support of their motion to dismiss medical care claims are in the context of summary judgment motions. *See Melendez v. Wright*, 9:05-CV-1614, 2008 WL 4757360 (N.D.N.Y. Oct. 29, 2008),   Although the decision in *Verley v. Goord*, 02 Civ. 1182, 2004 U.S. Dist. LEXIS 857 (S.D.N.Y. Jan. 22, 2004) was on a motion to dismiss, the court notes that Verley did not allege that the doctor "purposely" failed to treat his medical condition or that the diagnosis was contrary to accepted medical standards. *Id.* at *43-44.  Plaintiff in this case alleges that defendant

de Azevedo had a non-medical, discriminatory reason for interfering with plaintiff's treatment. While plaintiff's allegations may ultimately fail, based upon the facts presented, this court finds that plaintiff's complaint survives a motion to dismiss for failure to state a claim.

5.  **Privacy**

The Due Process Clause of the Fourteenth Amendment protects inmates from the unwanted disclosure of health-related information. *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994), *cited in Verley v. Goord*, 2004 U.S. Dist. LEXIS 857, *60 (S.D.N.Y. Jan. 22, 2004). Prison officials may impinge upon that right only to the extent that their actions are "reasonably related to legitimate penological interests." *Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir. 1999).

With respect to the "disclosure" of medical information, the court notes that an inmate's privacy right varies with the inmate's condition, with a greater interest in preventing the disclosure of highly sensitive conditions. *Webb v. Goldstein*, 117 F. Supp. 2d 289, 298 (E.D.N.Y. 2000). In *Rodriguez v. Ames*, the court also held that where the information is spread through "humor or gossip," it is more likely that the inmate's right to privacy will have been violated. 287 F. Supp. 2d at 220 (citing *Powell*, 175 F.3d at 112).

In this case, plaintiff claims that the Inmate Grievance Program violates inmates' rights with respect to medical grievances because in order to file a grievance, an inmate must disclose his confidential medical information to other inmates in the IGRC. The grievance procedure in New York is a three-tiered process. The inmate

13

must first file a grievance with the Inmate Grievance Resolution Committee (IGRC). N.Y. COMP. CODES R. & REGS. (NYCRR), tit. 7 §§ 701.5 (a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id*. § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee (CORC). *Id*. § 701.5(d).

Similar claims made by inmates alleging that the disclosure of medical information either during a grievance or a disciplinary proceeding have been dismissed. *See Gowins v. Greiner*, 01 Civ. 6933, 2002 U.S. Dist. LEXIS 14098 (S.D.N.Y. July 31, 2002)(grievance); *Scott v. Gardner*, 287 F. Supp. 2d 477, 497 (S.D.N.Y. 2003)(disciplinary hearing). In *Verley v. Goord*, the court specifically rejected plaintiff's claim that he should not have to disclose medical information in a grievance in order to exhaust his administrative remedies. 2004 U.S. Dist. LEXIS 857, *63 n.14. Thus, the disclosure of medical information during a grievance proceeding, where the information is related to that proceeding does not violate an inmate's right to privacy, whether the disclosure is to non-medical staff or to inmates who are on the IGRC.

The court understands that plaintiff is challenging the process itself and requests that DOCS create an optional method of bringing medical grievances. The law is well-settled that inmates do not have a constitutional right to grievance procedures. *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003); *Davis v. Buffardi*, No. 0:01-CV-0285, 2005 U.S. Dist. LEXIS 45487, 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) (Magnuson, J.) ("[p]articipation in an inmate grievance

process is not a constitutionally protected right")(citations omitted).  It is not for the court to determine how DOCS processes its grievances.  Thus, plaintiff's challenge to the grievance process itself cannot stand.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 41) be **GRANTED** with respect to plaintiff's privacy claim, and the complaint **DISMISSED AS AGAINST DEFENDANT BELLAMY**, and it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 41) be **DENIED IN ALL OTHER RESPECTS.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: September 30, 2009

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge